FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MARCH 24, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 49

State of North Dakota,                                                 Plaintiff and Appellee

v.

Russell Walbert,                                              Defendant and Appellant

No. 20200197

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Julie A. Lawyer, Burleigh County State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Russell Walbert appeals from an amended criminal judgment after a jury found him guilty of gross sexual imposition. Walbert argues the district court created a structural error by denying his right to a public trial. We affirm.

I

[¶2]   Walbert was charged with four counts of gross sexual imposition on July 3, 2019. Walbert waived his right to a preliminary hearing and the case proceeded to a jury trial on November 19, 2019.

[¶3]   On November 19, 2019, a conference was held before trial began. At the conference, the State moved to stop people from entering and exiting the courtroom while the victim testified during trial. The State made clear it was "not asking for the courtroom to be closed, just that we don't have those interruptions while she's testifying, if there's no objection to that. Whoever is in, stays in. Whoever is out, stays out." Walbert agreed to the State's request. The district court made a verbal order:

> "Okay. That's what we'll do. The exception I would make is if someone in the audience starts to hear it and wants to leave and doesn't want to hear the rest, I'm not going to stop them from leaving . . . And force them to stay. But no one else will be allowed in once the testimony has started, until the completion of the testimony, but we won't close the courtroom."

The court did not enter a written order and did not analyze its decision under the four-factor *Waller* test. *See Waller v. Georgia*, 467 U.S. 39, 48 (1984) (explaining prior to a courtroom closure, the requesting party must advance an overriding interest likely to be prejudiced, the closure must be no broader than necessary to protect the interest, the court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure). No record exists showing if, when, or for how long the doors were locked during and after the victim's testimony, nor was a record

made of whether anyone was stopped from entering the courtroom during her testimony.

[¶4] The jury found Walbert guilty of four counts of gross sexual imposition in violation of N.D.C.C. § 12.1-20-03(2)(a), and was sentenced to prison. Walbert appeals from the amended criminal judgment.

II

[¶5] Walbert argues the district court created a structural error by denying his constitutional right to a public trial. He claims the court was required to engage in a *Waller* analysis before closing the courtroom, and the court's failure to do so requires reversal. The State argues the activity the court engaged in during the victim's testimony did not constitute a closure and Walbert's rights were neither affected nor denied.

[¶6] Whether the facts rise to the level of a constitutional violation is reviewed de novo on appeal. *State v. Morales*, 2019 ND 206, ¶ 14, 932 N.W.2d 106.

[¶7] Among other things, the Sixth Amendment to the United States Constitution guarantees the right to a public criminal trial. *See also* N.D. Const. art. I, § 12 ("In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial . . ."). A criminal defendant's public trial right is shared with the public to assure fairness, among other principles. *See In re Oliver*, 333 U.S. 257, 270 (1948); *Press-Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 7 (1986). "Violation of the right to a public trial is a structural error." *Morales*, 2019 ND 206, ¶ 15. Structural errors are constitutional errors "so intrinsically harmful as to require automatic reversal." *See, e.g., Morales*, at ¶ 15; *State v. Rogers*, 2018 ND 244, ¶ 3, 919 N.W.2d 193; *State v. Rende*, 2018 ND 56, ¶ 8, 907 N.W.2d 361; *State v. Decker*, 2018 ND 43, ¶ 8, 907 N.W.2d 378; *State v. White Bird*, 2015 ND 41, ¶ 24, 858 N.W.2d 642.

[¶8] The threshold question in determining whether a defendant's public trial right was implicated is whether the proceeding was closed. *See State v.*

2

*Martinez*, 2021 ND 42, ¶ 3. If so, we determine whether the trial court made appropriate *Waller* findings to justify the closure. *Id*. If not, a *Waller* determination is unnecessary because the defendant's public trial right was not implicated.

[¶9] It is well established that judges possess broad power to control their courtrooms, minimize disruptive behavior, and maintain security. *See, e.g., United States v. Lampley*, 127 F.3d 1231, 1239 (10th Cir. 1997) ("[R]equiring people to be in their seats within a reasonable time is within [a judge's] managerial authority."); *Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir. 1995) (concluding there was no closure where "the trial judge was merely maintaining order in his courtroom and ensuring a non-disruptive atmosphere for jury members, the litigants, the members of the press, and any members of the public who chose to attend"); *Herring v. Meachum*, 11 F.3d 374, 379-80 (2d Cir. 1993) (concluding there was no closure where the courtroom doors were locked during the jury charge because "spectators had unrestricted courtroom access throughout the trial, including the jury charge, as long as they arrived before it began." "Reasonable time, place, and manner limitations on access to the courtroom are permitted to ensure the fair and efficient administration of justice."); *People v. Esquibel*, 82 Cal. Rptr. 3d 803, 814 (Cal. Ct. App. 2008) ("[T]he closure of the courtroom doors to additional spectators . . . being both temporary in duration and motivated by legitimate concerns to maintain security and prevent continuous interruptions . . . and not involving the exclusion of preexisting spectators" did not constitute a closure.); *McCrae v. State*, 908 So.2d 1095, 1096 (Fla. Dist. Ct. App. 2005) (explaining that "[t]rial judges have broad authority to manage their courtrooms so that the people's business may be conducted fairly, efficiently, and expeditiously." Further, "[c]ontrolling ingress and egress to the courtroom in the manner the trial court did below is not a 'closure' but a 'reasonable restriction upon the time and manner of public access to the trial'"); *State v. Caldwell*, 803 N.W.2d 373, 390 (Minn. 2011) ("But we have recognized that 'a trial court may, in the appropriate exercise of its discretion, exclude spectators when necessary to preserve order in the courtroom.'"); *State v. Ware*, 498 N.W.2d 454, 458 (Minn. 1993) ("Without a doubt a trial court may, in the appropriate exercise of its discretion, exclude spectators when necessary to preserve order in the

3

courtroom."); *State v. Stark*, 334 P.3d 1196, 1201 (Wash. Ct. App. 2014) ("Generally, we reason a request to minimize disruptive behavior is not a closure.").

[¶10] Here, the State moved to bar people from entering and exiting the courtroom during the victim's testimony. The State made clear it was not asking that courtroom be closed, and instead only requested that people who were in the courtroom during the victim's testimony remain in the courtroom, and those who were not present at the beginning of the victim's testimony not be allowed to enter during the testimony. The State maintained its request was an attempt to minimize interruptions during the victim's testimony. The court agreed and ordered that those in the courtroom at the beginning of the testimony could remain and anyone attempting to gain entry after the victim's testimony had begun would need to wait.

[¶11] We agree with those courts, concluding judges possess broad power to control their courtrooms, minimize disruptive behavior, and maintain security. *See People v. Woodward*, 841 P.2d 954, 959 (Cal. 1992). The district court's actions here did not constitute a closure. Instead, the court restricted ingress and egress for a limited period to minimize disruptions during the child victim's testimony. *See McCrae*, 908 So.2d at 1096. Such a measure employed by the district court is a reasonable time and manner limitation within the district court's managerial authority. *See Herring*, 11 F.3d at 379-80. Because there was no closure, the district court was not required to engage in a *Waller* analysis. The district court's decision not to engage in a *Waller* analysis did not create a structural error.

## III

[¶12] The amended criminal judgment is affirmed.

[¶13] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

4